UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANNA ROSE CLAYPOOL,

                                      Plaintiff,

                      -vs-

NANCY A. BERRYHILL, *Acting Commissioner*,

                                      Defendant.

DECISION AND ORDER

16-CV-6195-CJS

_____

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Kelly Elizabeth Laga-Sciandra, Esq.<br>Kenneth R. Hiller, Esq.<br>Law Offices of Kenneth Hiller, PPLC<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, NY 14226<br>(716) 564-3288 |
| For Defendant: | Kathryn L. Smith, A.U.S.A.<br>U.S. Attorney's Office<br>100 State Street, Fifth Floor<br>Rochester, NY 14614<br>(585) 263-6760<br><br>Sixtina Fernandez, Esq.<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza, Room 3904<br>New York, NY 10278<br>(212) 264-2272 |

## INTRODUCTION

Plaintiff brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11 & 14. For the reasons that follow, the Commissioner's motion is granted and Plaintiff's motion is denied.

## BACKGROUND

On July 17, 2012, Plaintiff protectively applied for SSI, and on April 3, 2012, applied for disability insurance benefits with the Social Security Administration ("the SSA"). R.[1] 25. She alleged disability since March 8, 2011, due to bipolar disorder, anxiety disorder, degenerative disc disease of the lumbar spine with radiculopathy, and degenerative disc disease of the cervical spine with radiculopathy. R. 25, 27. On June 16, 2014, Plaintiff and a vocational expert ("VE") testified at a hearing before Administrative Law Judge John P. Costello ("the ALJ"). Tr. 47. On July 18, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. 41. On January 28, 2016, the Appeals Council denied Plaintiff's request for review.[2] R. 1. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### *I. District Court Review*

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substan-

---

[1] References to "R." are to the administrative record in this matter.

[2] The Appeals council on September 15, 2014, granted Plaintiff's counsel's request for additional time before acting on her appeal. R. 16.

tial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

*II. Disability Determination*

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which

is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### *I. The Record Is Not Incomplete*

Plaintiff argues that the ALJ failed in his duty to ensure the record of her mental health treatment was complete. Pl.'s Mem. of Law 19–20. The Court finds no merit in this argument.

At the hearing before the ALJ, counsel from the same firm that represents her in the district court was present. At the hearing, the ALJ asked counsel if she "had a chance to review the file" and if she had "any objection if [the ALJ] admit[ted] the file in evidence," to which counsel responded that she had reviewed the file and had no objection. R. 50. Although the ALJ's duty to ensure a complete record is not delegable to an attorney representing a claimant, nevertheless, the Second Circuit had held that when a party is represented, the ALJ's obligation is lessened. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). Plaintiff's counsel gave the ALJ no "reason to believe that [additional] information was necessary to reach a decision," *id.*, and has not now pointed to any specific information that would have influenced

4

the ALJ's decision on Plaintiff's mental residual functional capacity ("RFC"). *See Bushey v. Colvin*, 607 Fed. Appx. 114, 115 (2d Cir. 2015) (summary order) ("Bushey has not pointed to any evidence subsequent to that date that was not included in the record but could have influenced the Commissioner's decision."). The Record includes evidence of Plaintiff's mental health counseling dating back to 2006. R. Ex. 6F. If additional evidence could have influenced the ALJ's decision, counsel does not identify it and has not shown that the records received from the Wayne County Department of Mental Health were "'inadequate…to determine whether [Plaintiff was] disabled.'" *Brogan-Dawley v. Astrue*, 484 Fed. App'x 632, 634 (2d Cir. 2012) (summary order) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

*II. Dr. Finnity's Conclusion That Plaintiff Could Not Maintain a Schedule Is Unsupported*

Plaintiff argues that the ALJ mischaracterized her treatment and "cherry picked" the medical evidence to support his RFC determination. Pl.'s Mem. of Law 23. She contends that the ALJ improperly rejected a portion of the November 5, 2012, report of Kavitha Finnity, Ph.D. R. 647–50. Specifically, the ALJ rejected Dr. Finnity's opinion that Plaintiff was limited in her ability to maintain a regular schedule. Dr. Finnity wrote, "[s]he has difficulty maintaining a regular schedule due to anxiety." R. 649. The ALJ observed, "[h]owever, there is nothing in the treatment records, which reflect very conservative treatment and stable mental status, to support a finding that the claimant is limited in her ability to maintain a regular schedule."). R. 36. The ALJ further found that, "[w]hile the longitudinal evidence reflects an individual with significant bipolar disorder and anxiety, her limitations are mild to moderate, she has responded well to treatment, and her symptoms are well-managed with medications." R. 39.

In April of 2012, Plaintiff reportedly suffered from high anxiety and had not been in therapy for six weeks. R. 607. In July of 2012, she reported that her "anxiety level was through the roof" however, "now I'm not bothered by the things I was normally bothered by." R. 607.

5

In her Activities of Daily Living report, dated October 24, 2012, Plaintiff answered the question, "[h]ow does stress or changes in schedule affect you?" as follows: "I don't handle stress well. I get anxious. I make me [sic] get [sic] mood, rude, disrespectful to people. Then other time [sic] it maks [sic] me shut down, and I won't do anything won't go to appointments, leaving house, and I will just stay in bed." R. 231. Noted in an Individual Progress Note from Wayne Behavioral Health Network dated November 7, 2012, (two days after Dr. Finnity's examination), Plaintiff reported suffering from "severe anxiety in social situations and particularly in crowd[s]...." R. 670.

Donovan Holder, M.D., Pain Treatment Medicine of the Fingerlakes, Plaintiff's primary medical treatment provider for pain, identified no psychological conditions affecting Plaintiff's physical condition in his RFC questionnaire dated September 9, 2014. R. 12 ¶ 11 (*but c.f.* R. 1119 ¶ 11 RFC of May 20, 2014, where he indicates anxiety affects Plaintiff's physical condition). During her testimony at the June 16, 2014, ALJ hearing, Plaintiff reported that her once a month counseling and medication was helping her stay focused and made her mood steady. R. 73. She also testified that her attendance at mental health treatment was "pretty good" and that she "missed a couple of appointments because of taking the pain pills and ending up falling asleep," but she thought that "overall it's been okay." R. 74. She also testified that her therapist thought she was doing better and changed her appointments from three times per month to once per month. *Id*.

The Court finds that substantial evidence in the Record supports the ALJ's rejection of Dr. Finnity's November 2012 determination that anxiety would keep Plaintiff from maintaining a regular schedule. Dr. Finnity's conclusion is not supported by the subsequent treatment records, which show that Plaintiff steadily improved to the point that her therapist reduced

her sessions from three times per month, to once per month, as well as Plaintiff's own testimony about her ability to keep scheduled appointments.

### III. Dr. Holder's RFC Is Unsupported

As mentioned above, Dr. Holder treated Plaintiff for pain as a result of neck and back problems. He provided an RFC report dated May 20, 2014, in which he stated that Plaintiff would likely be absent from work more than four days per month, that she would have good days and bad days, that she could only use her extremities 25% of a work day, that she could stand and walk less than two hours in a workday, and that she could only sit four hours in a workday. R. 1118–22. In the same report, Dr. Holder indicated that Plaintiff would need to walk around during an eight hour work day approximately every 30 minutes, for a period of 5 minutes. R. 1120.

After extensively summarizing Dr. Holder's examination findings, and his opinion, the ALJ wrote the following concerning the Dr. Holder's RFC:

> In weighing Dr. Holder's May 20, 2014 opinion, I consider the fact that he has treated the claimant for her back impairments since September 2012. Additionally, the claimant's ongoing complaints of back pain, clinical findings, MRI and x-ray results, and treatment, which has included epidural steroid blocks and painkillers, establish that the claimant has significant impairments that limit her functioning. However, the record does not support Dr. Holder's opinion that the claimant can stand and walk less than two hours, particularly since his statement went on to state that the claimant required regular periods of walking during the day. Moreover, his opinion that the claimant will require unscheduled breaks and be absent from work more than four days a week is unsupported by the record, speculative, and not consistent with the claimant's treatment modalities. Accordingly, this opinion is given little weight.

R. 37. The ALJ then cited to Dr. Holder's opinion of June 3, 2014, fourteen days after his RFC determination, in which he wrote "that the claimant's percentage of temporary impairment was 75% (Exhibit 26F at 3)." R. 37. The ALJ continued: "However, this assessment is not ac-

companied by a function-by-function assessment of the claimant's abilities. I accord this opinion some weight, noting that it finds a temporary partial disability, not inconsistent with the residual functional capacity." R. 37.

In his initial examination report, dated September 24, 2012, Dr. Holder noted that Plaintiff "appears in no apparent distress," R. 675, that she was

> Ambulatory with right leg limp.
>
> Cervical and thoracic spine unremarkable. 2+ tender with trigger points left trapezius and shoulders. Lumbar flexion 80° with marked increased low back pain radiating to her legs. Lumbar extension 10° with moderate increased low back pain. Lumbar spine palpation 2+ tender at the lower segments. 1+ bilateral sacral iliac [sic] joint. Bilateral hips and facet joints unremarkable. [S]eated straight leg raise is unremarkable.

R. 675. He prescribed medication, and a TENS unit, and planned lumbar epidural steroid blocks, which turned out to be ineffective. R. 676, 681 (Nov. 27, 2012, "Epidural Series # 2 PT saw no improvement after ESB # 1."). After the second epidural injection, Plaintiff reported two days of pain relief, so Dr. Holder tried a third epidural block on January 15, 2013. R. 1048. In a follow-up appointment on February 20, 2013, Plaintiff reported no significant pain relief as a result of the third epidural block. R. 1050. Dr. Holder prescribed Tylenol No. 3. R. 1051. In a follow-up visit on April 3, 2013, Plaintiff reported no significant pain relief. Dr. Holder did not change medications, but scheduled a follow-up appointment in four months. R. 1052. On August 26, 2013, Dr. Holder saw Plaintiff and noted that she was not sleeping well at night, still experiencing significant pain, but he decreased her pain medication and advised her to consult her primary care doctor regarding sleeping medications. R. 1055.

Dr. Holder did not see Plaintiff again until February 24, 2014. R. 1056. At that time, she reported that she was in significant pain, that she had fallen down the stairs and went to

the emergency department, and that the medication Dr. Holder had prescribed was not working. R. 1056. He changed her pain medication to hydromorphone and scheduled a follow-up in two months. R. 1057. On April 21, 2014, Dr. Holder noted Plaintiff was sleeping well on and off, was still experiencing significant pain, and advised her against bed rest. R. 1058. He scheduled an MRI. R. 1059. The MRI took place on May 31, 2014, and identified disc herniation at L4–5 as well as degenerative facet joint changes at L5–S1, but without significant central spinal canal stenosis or significant neuroforaminal narrowing. R. 1124–25. Dr. Holder saw Plaintiff on June 3, 2014, and recorded that she was experiencing significant pain, that her medications were helping her pain "somewhat, but not lasting very long." R. 1127. He advised her against bed rest and prescribed a new medication. R. 1128. No further records from Dr. Holder are in evidence. During every examination, Dr. Holder reported that Plaintiff was neurologically stable. R. 1053, 1055, 1057, 1128. For every examination up until June 3, 2014, he also reported her musculoskeletal condition as unchanged. *Id.*

Despite Plaintiff's complaints of pain, usually a "10" on a scale of 1–10, Dr. Holder consistently prescribed conservative treatment (medication and no bed rest). His examination notes do not support his RFC conclusion concerning Plaintiff's inability to sit, or walk. In his analysis of whether Plaintiff's impairment met one of the listings, the ALJ wrote the following:

> while the claimant alleges difficulties standing and walking, the record reflects that following her January 3, 2011 injury, she was able to continue working as a resident aide with some restrictions until she quit her job on March 8, 2011 (Testimony; Exhibit 2E at 2; Exhibit 14E at 1; Exhibit 1F at 1). On January 13, 2011, only 10 days after her injury, she was noted as being able to perform her activities of daily living with increased pain and do heel and toe standing and walking (Exhibit 3F at 2). In February 2011, David Carlson, M.D. indicated that the claimant was able to move with minimal difficulty (Exhibit 3F at 8). In April and July 2012, she displayed a normal gait (Exhibit 4F at 2; Exhibit I IF at 5). In September 2012, Donovan Holder, M.D. noted that she was ambulatory with a slight right leg limp (Exhibit 10F at 2). Additionally, she had admitted being able to drive a car and dress, bathe, and groom herself (Exhibit 7F at 3). Accordingly,

9

> I find that the claimant's condition does not meet or equal section 1.04 of the Listings.

R. 33. On a May 6, 2011, questionnaire Plaintiff filled out, she indicated a rating of "5" on a scale of 0–10 (0 being "completely able to do" and 10 being "completely unable to do") for the question, "Rate your ability to walk," and a "7" for her ability to sit and stand. The emergency report of April 8, 2012, documenting Plaintiff's fall through a TV stand the prior evening, notes that she walked into the emergency department. R. 563. Dr. Holder's RFC conclusions are not supported by substantial evidence in the record and are contradicted by other evidence.

Evidence from Physician Assistant ("PA") John Henry Koch on March 21, 2012, R. 686 ("able to move from the chair to the exam table without much difficulty"), 687 ("gait was normal, deep tendon reflexes were symmetric"), and Justin Rymanowski, M.D., R. 292–94 ("normal, casual gait"), also fail to support Dr. Holder's restrictive RFC opinions. Plaintiff saw PA Koch to obtain a handicapped parking permit on November 27, 2012, but PA Koch told her she did not qualify for one. R. 723.

Plaintiff asks the Court to speculate that Dr. Holder may have based his restrictive RFC on his professional opinion by arguing that:

> As it was unclear what the basis for Dr. Holder's answer regarding the amount of time Plaintiff would miss from work, it is not outside a realistic realm that as Plaintiff's pain management provider his answer was based on his professional opinion and treatment of Plaintiff's pain level and frequency.

Pl.'s Mem. of Law 29. The Court will not so speculate. The Court also rejects Plaintiff's argument that the ALJ should have contacted Dr. Holder for clarification. As the Second Circuit has stated,

> While the opinions of a treating physician deserve special respect, *see, e.g., Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir. 1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980), they need not be

given controlling weight where they are contradicted by other substantial evidence in the record, *see, e.g., Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir. 1984); *Ferraris v. Heckler,* 728 F.2d 582, 586 n. 1 (2d Cir. 1984). Genuine conflicts in the medical evidence are for the Commissioner to resolve. *See, e.g., Richardson v. Perales,* 402 U.S. at 399, 91 S. Ct. 1420.

*Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The ALJ had the discretion to determine the best way to resolve the lack of support or any internal inconsistencies. *Owens v. Berryhill*, No. 2:17-CV-2632 (ADS), 2018 WL 1865917, at *7 (E.D.N.Y. Apr. 18, 2018) ("the ALJ has 'discretion to 'determine the best way to resolve the inconsistency or insufficiency'' when an ambiguity arises concerning a medical opinion from a treating physician. *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 416.920b).").

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings, [ECF No. 11](), is denied, and the Commissioner's motion for judgment on the pleadings, [ECF No. 14](), is granted. The Clerk is directed to enter judgment for the Commissioner and close the case.

DATED: July 12, 2018
       Rochester, New York

       /s/ Charles J. Siragusa
       CHARLES J. SIRAGUSA
       United States District Judge